Common Pleas Court of Hamilton County.

STATE EX REL SUPERINTENDENT OF BANKS V. DORGER ET AL.

Decided March 17, 1932.

*Paxton & Seasongood,* for motion.

*Gilbert Bettman,* Attorney General, and *Raymond J. Kunkel,* Special Counsel, *contra.*

SHOOK, J.

This cause comes on to be heard upon a motion of defendants, Ruth Dorger, Mary D. Clarke, Max Greenwald and Clarence A. Dorger for a new trial.

This is an action to enforce the individual liability of stockholders of the Cosmopolitan Bank & Trust Company, brought in this court by the Superintendent of Banks through the attorney general of the State of Ohio.

On June 10, 1930, the superintendent of banks took possession of the business and property of the said Cosmopolitan Bank & Trust Company for liquidation, by authority of Section 710-89, General Code; on July 30, 1930, in this court, in Cause No. A-21104, a statement of the assets and liabilities of said bank were filed, with an application to sell assets. Accompanying said application to sell assets was an offer from the Fifth Third Union Trust Company, signed by its president, E. W. Edwards, in which the said bank offered to purchase all of the assets of the Cosmopolitan Bank & Trust Company. In consideration of the transfer to the Fifth Third Union Trust Company of the assets of the Cosmopolitan Bank & Trust Company, the former bank agreed to pay what in effect amounts to 80 per cent. of the accounts of the depositors of the Cosmopolitan Bank & Trust Company, plus the sum of $250,000 (which has been arbitrarily fixed at an additional 3 per cent.), "and in addition thereto, as and when realized, proportionately on account of the listed amounts of each item of said remaining actual liabilities * * *, all monies realized over and above said sum of $7,294,972.75 by it paid or assumed to be paid on account of actual liabilities as hereinabove provided, plus legal expense necessarily incurred in realizing upon the assets." This application was granted and the offer of the said the Fifth Third Union Trust Company was accepted under proper order of this court. Thereupon, on August 9, 1930, the said superintendent of banks made an application in said Cause No. 21104 in which it was represented by the attorney general of the state of Ohio. Hon. Gilbert Bettman, and Raymond J. Kunkel, special counsel to said attorney general, that suit had been brought by the superintendent of banks in this court to enforce the liability of stockholders of said the Cosmopolitan Bank & Trust Company. The said superintendent of banks in said application applied as follows:

"Wherefore the applicants herein pray that so much of said order of July 30; 1930, as may direct said superintendent of banks to transfer and convey to said the Fifth Third Union Trust Company claims against stockholders of said the Cosmopolitan Bank & Trust Company on their individual liability as stockholders, and to transfer and convey to said the Fifth Third Union Trust Company any claims arising out of said fidelity bonds, be not carried out by said superintendent of banks, and that pursuant to the statutes of Ohio in such cases made and provided, the said O. C. Gray, superintendent of banks of the state of Ohio, proceed with the enforcement of the claims asserted in said suits against stockholders of said the Cosmopolitan Bank & Trust Company, and with the claims asserted against the said the Aetna Casualty & Surety Company of Hartford, Connecticut, the amounts recovered by him in said suits against stockholders and from said the Aetna Casualty & Surety Company of Hartford, Connecticut, to be paid over by him to said the Fifth Third Union Trust Company under and in pursuance of the agreement between them set forth in said application filed herein on July 30, 1930, and that said order of July 30, 1930, in all other respects remain in full force and effect."

This application was granted and a proper order entered of record in this court.

On August 14, 1930, there was filed in said cause the certificate of appointment of Edward F. Romer as Special Deputy Superintendent of Banks. Said Edward F. Romer was so appointed by authority of Section 710-94 of the General Code of Ohio, and has continuously acted in said capacity ever since.

Upon the hearing of this cause the undisputed evidence showed that Mr. Romer maintains a separate office as Special Deputy Superintendent of Banks, with his official title noted on the door leading thereto, and that all of the accounting and records are maintained by the said Edward F. Romer in his said capacity, and that assets coming into his possession have been kept in a separate vault or receptacle in the Fifth Third Union Trust Company of Cincinnati.

The record also discloses that, including the collection of the stockholders' liability, there will not be paid in

excess of another 3 per cent. to depositors, so that it is clear that the depositors will not receive in excess of 86 per cent., as the maximum.

At the conclusion of the evidence, upon proper motion, the court instructed a verdict for plaintiff in the full amount for which he prayed in the petition.

We will pass upon the arguments advanced by defendants in support of their motion for a new trial, in the order set forth in their brief.

### FIRST.

Defendants argue that Sections 710-75 and 710-93 must be taken in *pari materia*. In the pertinent part thereof Section 710-75 reads:

"At any time after taking possession of a bank for the purpose of liquidation, when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities, he may enforce the individual liability of the stockholders."

Section 710-93 reads:

"Upon taking possession of the property and assets of such bank the superintendent of banks shall make an inventory of the assets of such bank in triplicate—. Upon the expiration of the time fixed for the presentation of claims, the superintendent of banks shall make in triplicate a full and complete list of the claims presented."

While it is conceded that later an appraisement and inventory of the assets were filed in this court, nevertheless it is urged that the superintendent of banks, as a condition precedent, was obliged to file an inventory of the assets of such bank in triplicate, in compliance with Section 710-93, General Code, *supra,* and further that the superintendent of banks cannot make the ascertainment "out of the air or on rumor." It is granted that the superintendent of banks must have ground upon which to justify his taking possession of the assets of a bank. His authority is found in Section 710-89, General Code, containing nine grounds for the taking of possession of a bank by the superintendent of banks. Sections two and three read:

"The superintendent of banks may forthwith take possession of the business and property of any bank to which this act is applicable, whenever it shall appear that such bank:

2.   Is conducting its business in an unauthorized or unsafe manner;

3.   Is in an unsound or unsafe condition to transact its business."

Subsequent events proved conclusively that the superintendent of banks had ample ground, under either or both of these sections, to take possession of this bank. See case of *Ramisch* v. *Ira J. Fulton, Superintendent,* decided January 11, 1932, reported in the Ohio Law Bulletin and Reporter, March 7, 1932, page 120.

Section 710-75, General Code, is entirely disassociated from and exclusive of Section 710-93, General Code. Upon careful study of these two sections of the General Code we have come to the conclusion finally that they are not to be construed together. That compliance with Section 710-93, General Code, is not a .condition precedent to the taking by the superintendent of the property of a bank is easily demonstrated. By no possible force of logic or construction can we construe Section 710-93, General Code, to mean that the superintendent of banks shall take possession only after an inventory of the assets of such bank have been made in triplicate. In fact, it is just the other way around. A reasonable construction is that the superintendent of banks takes possession of a bank according to law and then files an inventory in triplicate, which has been done in this case.

It is to be presumed that the superintendent of banks does not take possession of the assets of a bank on any but well founded reasons and facts. To hold otherwise would imply bad faith. There is nothing in this record nor in the proceedings heretofore had with reference to this bank upon which any such argument could be based.

We, therefore, find that the ascertainment of liability and filing of the suit were not premature, but that all of the steps taken by the superintendent of banks were

taken in accordance with the statutes and the specific orders of this court.

While it is not necessary for the purpose of this opinion, for the reason that under no circumstances will 100 per cent. of the claims of the creditors be paid, nevertheless as the proposition has been raised and argued we deem it sufficient to state that in our judgment Section 710-75, General Code, gives ample authority for the Attorney General to file this action on behalf of the superintendent of banks prior to the ascertainment of the amount to be realized for the creditors. The concluding paragraph of Section 710-75, General Code, is plain and conclusive in its meaning:

"At any time after taking possession of a bank for the purpose of liquidation when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders."

We believe it is sound reasoning and good law to state that in the event that more than enough is realized to pay the creditors in full, it inevitably follows that the surplus, whatever it may be, shall be distributed among the stockholders *pro rata*. However, counsel for the defendants insists that this would work an injustice, inasmuch as the said Frank J. Dorger, the largest stockholder, is in bankruptcy and his estate has only paid a small dividend on claims so far. Further, counsel reasons that if there were an excess of assets, including amounts collected on alleged stockholders' liabilities, the trustee in bankruptcy, as successor to his rights as a stockholder, might receive a refund larger than the dividend paid, while other stockholders were paying in one hundred cents on the dollar and only receiving a small dividend back.

We believe, however, that in view of the progress of the affairs of this bank and of the stockholders involved and more especially of the status of Frank J. Dorger in relationship to the affairs of this bank, equitable principles would bar such a result.

## SECOND.

It is claimed further that the instant suit by the superintendent of banks is barred by reason of an action which had been previously brought by a creditor; the said action by said creditor having been dismissed after a demurrer thereto was filed to the action. The demurrer was sustained on the ground that the creditor had no right to bring the action. No proceedings in error were instituted in that action. This decision is in conflict with the subsequent ruling of the Supreme Court in the case of *Snider* v. *Banking & Trust Company*, 124 O. S., 375. However, a careful reading of the Snider case will show that the facts herein are entirely different, and that the instant case is readily distinguishable. We will pass the argument that there was no proper action pending by a creditor at the time this suit was brought. In view of the state of this record, the distinction is shown by the conclusion of the Supreme Court in the Snider case (page 381):

"In November, 1929, when this suit was instituted against the stockholders, there were no assets or property upon which the administration of the superintendent of banks could operate. His possession for purposes of liquidation being a condition precedent to his maintaining a suit against the stockholders, the conclusion is inevitable that the superintendent of banks is not even a proper party to maintain this action."

Further, we do not interpret the Snider case to give either a creditor or the superintendent of banks the exclusive right to file an action of this sort. Syl. two and three read:

"2. The provisions of Sections 710-75, 710-89 and 710-95, General Code, are regulatory and procedural, and neither augment nor diminish the constitutional rights of creditors.

3. The right of the superintendent of banks to enforce such individual liability only applies where he has taken charge of the property and business of the corporation for the purposes of liquidation."

The proceedings in this court are strictly within the limitations expressed in syl. 3, *supra*.

At any rate, under the facts and circumstances as shown by the records of this court, we find that the superintendent of banks had the necessary statutory authority to proceed and that all of the actions that were taken were properly authorized by the necessary court orders.

### THIRD.

Counsel argues, further, that plaintiff herein is not the real party in interest. Section 11241, General Code, provides:

"An action must be prosecuted in the name of the real party in interest  *  *  *."

It is claimed that the real party in interest, in view of the contract entered into between the Fifth Third Union Trust Company and the Cosmopolitan Bank & Trust Company on July 30, 1930, is the Fifth Third Union Trust Company; that the superintendent of banks is only a nominal party; further, that there is no assurance that the stockholders' liability claims, if collected, will be used for the benefit of the creditors of the Cosmopolitan Bank & Trust Company.

From the evidence submitted, in view of the impending disaster to thousands of depositors, the contract was not only desirable but extremely favorable to the depositors.

We have scrutinized the said contract of July 30, 1930, most carefully and are in full accord not only with the justice and fairness of this arrangement, but with the judicial actions and orders of our colleague. The contract was passed upon and authorized by this court (Judge Stanley Struble, sitting), and each and every subsequent act of the superintendent of banks was under the supervision and direction of said judge. The said judge of this court, in cause No. A 21104 also, on August 9, 1930, directed the superintendent of banks to proceed with the enforcement of the claims in the instant case.

Mr. Romer, the Deputy Superintendent of Banks, in charge of the liquidation of the assets of the Cosmopolitan Bank & Trust Company, testified that 3 per cent. more than contemplated by the contract would be paid to depositors, including the collectible claims against stockholders. This in itself makes the superintendent of banks, liquidating this bank, through his deputy superintendent, the real party in interest. To hold otherwise, would be to ask the court to nullify the actions and orders of one of its colleagues. This would tend toward great confusion and would be highly disconcerting. We would be obliged to refuse to give full faith and credit to another judicial opinion, and also violate the idea of uniformity of judicial construction in our Common Pleas Court of this county. Further, the superintendent of banks is acting within the meaning and terms of Section 710-95, General Code. The said superintendent is acting in strict accordance with the following clause thereof and is subject to the orders of this court until the entire liquidation is complete:

"The superintendent of banks shall collect all debts due and claims belonging to it, and upon the order of the Common Pleas Court in and for the county in which the office of such bank was located, may sell or compound all bad or doubtful debts, and on like order may sell the real estate and personal property of such bank, on such terms as the court shall direct."

### FOURTH.

Counsel contends, finally, that there was a conflict in the evidence which made it imperative that the case be submitted to the jury, under the scintilla rule, in that the testimony of Mr. Romer was merely the expression of an opinion, and that the jury was not bound to believe Mr. Romer, who testified as an expert. We do not take this view of the case. While Mr. Romer is an expert, he is acting fundamentally and primarily under the direction of this court, and while his testimony that an extra 3 per cent. could be expected over and above the offer made by the Fifth Third Union Trust Company on July 30, 1930, was an approximation, nevertheless his testimony

was based upon facts and records and data in his official possession. The only possible interpretation of his testimony is that the extra 3 per cent. was the maximum, under any circumstances, which the records in his possession would disclose. The facts and circumstances not only are not in conflict with his testimony and opinion, but entirely support it. In this respect the case of *Aetna Life Ins. Co.* v. *Hagemyer et al.*, 53 Fed. (2d) (636), Advance Sheets for January 18, 1932, submitted by counsel for defendants, does not apply. The syllabi, which correctly state the conclusions of the court, read:

"1. That insured was shot by another made *prima facie* case of accidental killing within double indemnity provisions in life policy.

2. Respecting recovery under double indemnity provision for accidental death, jury could reject testimony of nephew, not directly contradicted, that he shot insured in self defense.

3. Jury had right to accept or reject nephew's testimony in whole or in part notwithstanding it was not directly contradicted by other witnesses, in view of discrediting and contradictory circumstances disclosed by evidence, and also in view of fact of strong motive or interest of nephew in exculpating himself from guilt of parricide."

The distinction between the Hagemyer and the instant case is that there are no discrediting and contradictory circumstances disclosed by the evidence herein, which would present a conflict under the scintilla rule, necessitating the submission of the issues herein to the consideration of a jury. We accept the law to be that there may be a conflict in surrounding facts and circumstances as well as in direct evidence offered in contradiction. We do not find such to be the case herein.

Therefore, for the foregoing reasons the motion for a new trial must be and hereby is overruled. An entry should be presented accordingly.